IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Larry A. White, Plaintiff, v. Bryan P. Stirling, *Director of SCDC*; Dennis Patterson, *Assistant Deputy Director of SCDC*; Daniel Harouff, *Deputy Warden at Perry Correctional Institution*; Curtis Earley, *Warden at Perry Correctional Institution*; David Burzenski, *Lieutenant at Perry Correctional Institution*; Ms. Williams, *Classification Caseworker at Perry Correctional Institution*; Brent Blakeley, *Captain at Perry Correctional Institution*; Giddel Salazar, *Lieutenant at Perry Correctional Institution*; SCDC, Defendants. | Case No. 9:24-cv-03715-JDA<br><br>**OPINION AND ORDER** |

This matter is before the Court on Defendants' motion for summary judgment and Plaintiff's motion for preliminary injunction.[1] [Docs. 56; 72.] In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this matter was referred to United States Magistrate Judge Molly H. Cherry for pre-trial proceedings.

On December 19, 2025, the Magistrate Judge issued a Report and Recommendation ("Report") recommending that the summary judgment motion be granted and the preliminary injunction motion be denied. [Doc. 83.] The Magistrate Judge

[1] The motion for preliminary injunction is a letter Plaintiff submitted to the Court that the Court has liberally construed as a motion for preliminary injunction. [Docs. 72; 83 at 7.]

advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. [*Id.* at 40.] Plaintiff filed objections to the Report; Defendants filed a reply to Plaintiff's objections; and Plaintiff filed a sur-reply to Defendants' reply.[2] [Docs. 86; 87; 88.]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a de novo determination of only those portions of the Report that have been specifically objected to, and the Court may accept, reject, or modify the Report, in whole or in part. 28 U.S.C. § 636(b)(1). The Court will review the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" (internal quotation marks omitted)). Although "objections need not be novel to be sufficiently specific," *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023), "a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection," *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017) (internal quotation marks omitted); *see Regassa*

[2] The Federal Rules of Civil Procedure do not provide for sur-replies to objections to Reports and Recommendations. Fed. R. Civ. P. 72(b)(2). However, out of an abundance of caution and because Plaintiff is proceeding pro se, the Court has considered the sur-reply in ruling on the pending motions and Report.

*v. Warden of FCI Williamsburg*, No. 8:22-cv-466-SAL, 2023 WL 2386515, at *2 (D.S.C. Mar. 7, 2023) (concluding an objection was non-specific because the petitioner "ignore[d] the magistrate judge's analysis and repeat[ed] the arguments he made in his opposition brief"); *Velez v. Williams*, No. 9:19-cv-03022-JMC, 2021 WL 837481, at *5 (D.S.C. Mar. 5, 2021) (reviewing for clear error where the petitioner's objections were "rehashed, general, and non-specific"), *appeal dismissed*, No. 21-6342, 2021 WL 5879177 (4th Cir. Dec. 13, 2021).

## BACKGROUND

The Magistrate Judge accurately summarized the factual background of this case as follows:

> Plaintiff is an inmate in the custody of Defendant South Carolina Department of Corrections ("SCDC"). Plaintiff filed this action on June 27, 2024. Plaintiff brings claims largely based on his housing at Perry Correctional Institution ("PCI").
>
> In his Verified Second Amended Complaint, Plaintiff attests he has been in the Restrictive Housing Unit ("RHU") since 2018 and was placed on security detention ("SD") Level 2 on August 16, 2022. At the initial hearing placing him on SD, Plaintiff was asked if he had anything to say, and Defendant Earley interrupted him to inform him that "headquarters said to SD you so that's what we're going to do and there is nothing you can say to change that." Plaintiff complains his status has been predetermined since his initial placement on SD.
>
> Plaintiff's status was increased to SD Level 3 at PCI on November 8, 2022, and he asserts that he has not had a meaningful opportunity to challenge his placement since that time.
>
> Plaintiff has remained on SD Level 3 since November 2022, even though he has not been charged with a disciplinary infraction since July 29, 2022, and he continues to be held in solitary confinement despite not having "been found guilty of any charges from the 2018 Lee Correctional

[Institution ("Lee")] Riot, but inmates that have pled guilty have been released to [general] population or programs." "Altogether Plaintiff has been in solitary confinement for almost 7 years with the exception of 7 days in [the] Step Down program."

Plaintiff asserts that as Agency Director of SCDC, Defendant Stirling has the authority to remove Plaintiff from RHU and SD but refuses to do so. Plaintiff claims Stirling has been deliberately indifferent to his conditions of confinement by ignoring Plaintiff's requests to be removed from RHU despite actual and constructive knowledge that prolonged solitary confinement exacts a lasting psychological toll upon inmates.

Plaintiff describes SD as a form of punishment: inmates are to remain on lock up, staying in their cells for twenty-four hours a day on non-shower and non-recreation days. They are provided only three showers a week and are limited to two pairs of socks and two pairs of boxers. All meals are taken in their cells (and are smaller portions of food than general population), and inmates are strip searched upon exiting their cells, only given state-issued hygiene items, not allowed to have or order canteen items, not able to obtain earned work credits or education credits to have time taken off their sentence, not given proper recreational exercise, made to walk on a leash when outside their cells, and not able to have contact visits, with limited phone calls.

Plaintiff also describes an encounter with Defendants Salazar and Blakeley on May 16, 2023, concerning the length of his hair. Plaintiff asserts these Defendants determined his hair exceeded the allowable length of one inch, informed him he had to have a haircut, threatened to use a cell extraction team to remove him for a haircut, and gathered the team to conduct the removal, even though Plaintiff was not out of compliance. Plaintiff ultimately came out of his cell willingly. A non-African American inmate on the same wing was yelling to Defendants Salazar and Blakeley that he needed a haircut but was ignored.

Plaintiff asserts that his solitary confinement violates his Eighth Amendment rights. He further contends that the lack of meaningful review violates his right to due process under the Fourteenth Amendment. He also argues that his right to equal protection under the law was "violated when he

> was given a forced haircut" but a haircut was not forced upon "another similar[ly] situated inmate that is of a different race." His complaint includes a state law claim for intentional infliction of emotional distress, and he seeks $250,000 in compensatory damages from each Defendant; $20,000 in nominal damages from each Defendant; $50,000 in punitive damages from each Defendant; a release from the RHU and good time reinstatement; and a categorical limit on the amount of time an inmate can spend in the RHU.

[Doc. 83 at 2–5 (alterations in original) (record citations omitted).[3]]

## **DISCUSSION**[4]

The Magistrate Judge recommends that Defendants' motion for summary judgment be granted and Plaintiff's motion for preliminary injunction be denied. [Doc. 83.] First, the Magistrate Judge recommends dismissing with prejudice Defendants Salazar, Harouff, Williams, Burzenski, Patterson, and SCDC and the intentional infliction of emotional distress claim. [*Id.* at 8–9.] Next, the Magistrate Judge concluded that Plaintiff's claims are not barred by res judicata but that Defendants are entitled to summary judgment as to Plaintiff's remaining claims for violations of his Eighth Amendment right not to be subjected to cruel and unusual punishment, his Fourteenth Amendment right to due process, and his Fourteenth Amendment right to equal protection. [*Id.* at 10–36.] The Magistrate Judge also concluded that Defendants are

---

[3] Plaintiff generally does not object to the Report's factual recitation. [*See generally* Docs. 86; 88.] To the extent he does object to any factual recitation in the Report [*see* Doc. 88 at 1 (clarifying that he was indicted before the second investigation related to the Lee riot)], such factual dispute is immaterial to the Court's analysis of the pending motions.

[4] The Magistrate Judge accurately summarized the relevant summary judgment and preliminary injunction standards. [Doc. 83 at 5–7.] Accordingly, the Court does not repeat those standards.

entitled to qualified immunity. [*Id.* at 36–37.] Finally, the Magistrate Judge recommends denying Plaintiff's motion for preliminary injunction. [*Id.* at 37–39.]

Plaintiff does not object to the Magistrate Judge's recommendations that his motion for preliminary injunction be denied and that the Court dismiss with prejudice Defendants Salazar, Harouff, Williams, Burzenski, Patterson, and SCDC and the intentional infliction of emotional distress claim. [*See generally* Doc. 86.] Accordingly, the Court has reviewed the Report, the record, and the applicable law regarding those recommendations for clear error. Having found no clear error, the Court accepts the Report with respect to the recommendations that Plaintiff's motion for preliminary injunction be denied and that the Court dismiss with prejudice Defendants Salazar, Harouff, Williams, Burzenski, Patterson, and SCDC and the intentional infliction of emotional distress claim.

The Court will now turn to Plaintiff's objections and discuss them with respect to the claims they address.[5]

**Eighth Amendment Claim and Related Objections**

As the Magistrate Judge explained, to demonstrate a violation of the Eighth Amendment based on conditions of confinement, a plaintiff must satisfy a two-part test consisting of both an objective and a subjective inquiry. [Doc. 83 at 18–19.] First, the plaintiff must show that he is incarcerated under conditions posing a serious or significant physical or emotional injury or a substantial risk of serious harm. *Porter v. Clarke*, 923 F.3d 348, 355 (4th Cir. 2019), as amended (May 6, 2019). Second, the plaintiff must

[5] The Court specifically addresses Plaintiff's objections that are material to the Court's decision on the pending motions. However, the Court has considered all of Plaintiff's objections in conducting its de novo review of the remaining claims in this case.

show that the prison officials acted with deliberate indifference, which is "more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 361 (cleaned up). To establish deliberate indifference, the plaintiff must show that the prison officials knew of and disregarded a substantial risk to inmate health or safety, and an obvious risk of harm creates an inference that the officials subjectively disregarded a substantial risk of harm. *Id.* "[T]he penological justification supporting a challenged condition is relevant in a conditions of confinement case," *id.* at 362, such that "[t]he existence of some valid penological purpose . . . could negate any presumption that prison officials were acting with malicious or sadistic intent in subjecting a prisoner to a particular condition," *Mason v. Talley*, No. 1:21cv1118 (LMB/JFA), 2023 WL 2619160, at *11 (E.D. Va. Mar. 22, 2023), *appeal dismissed*, No. 23-6483, 2023 WL 5666452 (4th Cir. Sept. 1, 2023). *See also Thorpe v. Clarke*, 37 F.4th 926, 941 n.5 (4th Cir. 2022) ("Absence of penological purpose plays a part in [conditions of confinement inquiries], as it helps establish that corrections officers acted with culpable mental state rather than for justifiable reasons."); *Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990) (looking to "institutional competence" and penological objectives to decide whether "prison administrators' conduct constitutes deliberate indifference").

Here, the Magistrate Judge assumed Plaintiff can satisfy the objective element of his Eighth Amendment claim but concluded that he cannot show that Stirling or Earley—the remaining Defendants against whom Plaintiff asserts this claim—had the requisite subjective intent necessary to prove his claim. [Doc. 83 at 19–26.] Specifically, the Magistrate Judge concluded that the evidence before the Court establishes that a

legitimate penological justification supports the conditions to which Plaintiff has been subjected. [*Id.* at 20–26.] In his objections, Plaintiff argues that he has established his Eighth Amendment claim but focuses his argument on the known risk of serious psychological and emotional harm to inmates from placement in solitary confinement and on purported explanations for his behavior that led to criminal and disciplinary charges while incarcerated.[6] [Doc. 86 at 1–3.] However, Plaintiff fails to direct the Court to anything in the record that creates a genuine dispute of material fact regarding whether Defendants had the subjective deliberate indifference required to establish an Eighth

[6] Plaintiff also objects to the Report's "mentioning of Plaintiff's criminal charges and [d]isciplinary record" in support of concluding that Defendants had a valid penological purpose for placing Plaintiff in SD status. [Doc. 86 at 2.] He contends his criminal charges and disciplinary record "should not have been considered in the decision" because "[R]ule 3.4 of the Rules of Professional Conduct was violated by the Defendants' attorneys[, who] are not supposed to present, participate in presenting, or threaten to present criminal or professional disciplinary charges to gain an advantage in a civil matter." [*Id.*] It appears to the Court that Plaintiff may have intended to reference Rule 4.5 of the South Carolina Rules of Professional Conduct, which provides that "[a] lawyer shall not present, participate in presenting, or threaten to present criminal or professional disciplinary charges solely to obtain an advantage in a civil matter." Rule 407, SCACR, Rule of Professional Conduct 4.5; *see* Local Civ. Rule 83.I.08, RDE Rule IV(B) (D.S.C.) ("The Code of Professional Responsibility adopted by this court is the South Carolina Rules of Professional Conduct (Rule 407 of the South Carolina Appellate Court Rules) adopted by the South Carolina Supreme Court . . . ."). However, Rule 4.5 is inapplicable here. Although the South Carolina Rules of Professional Conduct "set[] forth the ethical standards for attorneys who practice in this district," *Reeves v. Town of Cottageville*, No. 2:12-cv-02765-DCN, 2014 WL 4231235, at *1 (D.S.C. Aug. 26, 2014), nothing in those Rules limits what a court may consider when ruling on motions. Moreover, that Defendants and their counsel submitted evidence to the Court of Plaintiff's criminal charges and disciplinary record does not constitute presenting, participating in presenting, or threatening to present criminal charges within the meaning of Rule 4.5.

Amendment violation given the penological justification for Plaintiff's placement in solitary confinement.[7] Accordingly, the Court overrules this objection.

**Fourteenth Amendment Due Process Claim and Related Objections**

As the Magistrate Judge explained, to establish a procedural due process violation, a plaintiff must satisfy a two-part test. [Doc. 83 at 26.] First, he must identify a protected liberty interest, and second, he must show a deprivation of that interest without due process of law. *Smith v. Collins*, 964 F.3d 266, 274 (4th Cir. 2020). To meet the first prong, a plaintiff must show "that there is a basis for an interest or expectation in state regulations for avoiding [solitary] confinement, and . . . that the conditions impose[ ] atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 275 (some alterations in original) (internal quotation marks omitted).

Here, the Magistrate Judge concluded that Plaintiff has not shown that the conditions he was subjected to imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. [Doc. 83 at 27, 31–35.] "[T]he atypical-and-significant-hardship analysis [turns] on primarily three factors: (1) the magnitude of confinement restrictions; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences on the inmate's sentence." *Smith*, 964 F.3d at 275 (internal quotation

[7] In his sur-reply, Plaintiff argues that Defendants do not have a penological justification for keeping Plaintiff in SD, asserting that other inmates within SCDC who have pending criminal charges for murder, attempted murder, and assault are housed in general population and that Defendants are housing Plaintiff in solitary confinement to retaliate against him. [Doc. 88 at 1.] He has also argued that he is being kept in solitary confinement as a tactic to manipulate him into pleading guilty to his pending criminal charges. [Docs. 86 at 2, 3; 88 at 2, 3.] Crucially, though, Plaintiff has offered no *evidence* to support his assertions or to create a genuine dispute of material fact as to whether Stirling or Early acted with subjective deliberate indifference.

marks omitted); *see Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing that, "[w]hile any of these conditions[, including severe limitations on human contact, indefinite duration, and parole ineligibility,] standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context"). The Magistrate Judge concluded that, even if the Court weighs the first factor in Plaintiff's favor, he has not established the remaining two factors. [Doc. 83 at 31–35.] As to the second factor, the Magistrate Judge noted that the record establishes that Plaintiff's custody is reviewed every 90 days and that he remained on SD because he was awaiting trial for pending state grand jury charges. [*Id.* at 32–34.] As to the third factor, the Magistrate Judge concluded that Plaintiff cannot show that his sentence has been negatively impacted.[8] [*Id.* at 34.]

In his objections, Plaintiff contends his confinement is for an indefinite period because his reviews are denied "for the same exact reason each relevant time." [Doc. 86 at 3.] He also argues that his time in solitary confinement is negatively impacting his sentence because he has lost good time credit and his release date has been pushed back. [*Id.* at 3–4; Doc. 88 at 2.]

Based on the current record, the Court is unable to determine whether the conditions Plaintiff was subjected to imposed an atypical and significant hardship. The

---

[8] The Magistrate Judge determined that Plaintiff's Fourteenth Amendment due process claim in this action is limited to allegations regarding the lack of meaningful review in terminating his SD status and does not include any allegations regarding the decision to initially place him on SD status. [Doc. 83 at 12–14, 16–17.] Plaintiff has not objected to that portion of the Report [*see generally* Docs. 86; 88], and, accordingly, the Court limits its consideration of Plaintiff's due process claim to allegations regarding the lack of meaningful review in deciding whether to continue his SD status that began in August 2022 [*see* Doc. 52 ¶¶ 30–33].

Supreme Court has made clear that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate" and that "[p]rison officials must engage in some sort of periodic review of the confinement of such inmates." *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983). Although the periodic review "need not be extensive," it "must be meaningful; it cannot be a sham or a pretext." *Toevs v. Reid*, 685 F.3d 903, 912 (10th Cir. 2012); *see also Williamson v. Stirling*, 912 F.3d 154, 183 (4th Cir. 2018) (noting that the periodic reviews required under *Hewitt* "must be meaningful enough to take into account the 'facts relating to a particular prisoner'" (quoting *Hewitt*, 459 U.S. at 477 n.9)). Here, the Court does not have before it sufficient information specific to Plaintiff's 90-day classification reviews. Although the record includes copies of some of the review dispositions [Docs. 46-1; 63-3 at 38–61], confirming that the reviews occurred, as Plaintiff points out, many of the forms list the same conclusory reason for keeping Plaintiff in SD [Doc. 63-3 at 52 (March 1, 2023 RHU Coordinator Decision for Plaintiff to remain in SD "[d]ue to the disciplinary case #5 homicide still being under investigation"), 54 (June 5, 2023 RHU Coordinator Decision for Plaintiff to remain in SD for the same reason), 57 (November 2, 2023 RHU Coordinator Decision for Plaintiff to remain in SD for the same reason), 58 (February 28, 2024 RHU Coordinator Decision for Plaintiff to remain in SD for the same reason), 59 (May 9, 2024 RHU Classification Committee Review recommendation that Plaintiff remain in SD "due to him still being under investigation with OIG"), 60 (October 8, 2024 RHU Classification Committee Review recommendation that Plaintiff remain in SD "due to still being under investigation"), 61 (January 7, 2025 RHU Classification Committee Review recommendation that Plaintiff remain in SD for the same reason); *see also id.* at 55 (July 10, 2023 RHU Review Committee Decision for Plaintiff

to remain in SD, indicating merely that the review committee "reviewed [Plaintiff's] case and voted for [him] to remain in [SD]" without providing additional reasoning)]. Patterson has averred in this action that Plaintiff should "remain in SD at least until his pending criminal charges have been resolved" because of "the potential for [Plaintiff] to identify and intimidate witnesses regarding his state grand jury charges pertaining to the Lee riot [and] his pattern of violent, ongoing criminal behavior since being in SCDC's custody." [Doc. 56-11 ¶ 26.] However, nothing in the record establishes this was the basis for the decisions by the RHU Classification Committee or the RHU Coordinator at the time of the reviews or that the "pending criminal charges" referenced by Patterson are the same as the "investigation" referenced in the classification forms. *Cf. Isby v. Brown*, 856 F.3d 508, 527–28 (7th Cir. 2017) (concluding that genuine issues of material fact existed as to whether an inmate's 30-day reviews of continued placement in administrative segregation complied with due process, in part based on the "rote repetition of the same two boilerplate sentences following each review"); *Incumaa v. Stirling*, 791 F.3d 517, 534 (4th Cir. 2015) (emphasizing that the classification committee "merely rubber-stamped [the inmate's] incarceration in [solitary confinement] (figuratively and sometimes literally), listing in rote repetition the same justification every 30 days" (internal quotation marks omitted)). Accordingly, on the current record, the Court cannot determine whether Plaintiff's 90-day reviews are meaningful such that his segregation is not indefinite.[9]

---

[9] Additionally, the Court notes that, at certain points, the RHU Classification Committee recommended that Plaintiff be released from SD based on his positive behavior in RHU. [Doc. 63-3 at 51, 53, 56.] However, upon review, the RHU Coordinator determined that Plaintiff should remain in SD, noting that the goal for Plaintiff to be released was to adhere to SCDC's rules and regulations [*id.* at 52, 54, 57, 58], which it seems the RHU Classification Committee had determined Plaintiff was adhering to. Without more to

Moreover, Plaintiff has averred that inmates in SD are "not able to obtain earned work credits or education credits to have time taken off of their sentence." [Docs. 52 ¶ 14 (Amended Verified Complaint); 63-1 (Affidavit).] And the Fourth Circuit has recognized that inability to earn good-time credits is a collateral consequence of administrative segregation. *Smith*, 964 F.3d at 280. Accordingly, on the current record, the Court is unable to determine whether a genuine issue of material fact exists as to whether Plaintiff's conditions of confinement in SD imposed an atypical and significant hardship such that he has a protected liberty interest.[10] Therefore, the Court sustains Plaintiff's objections regarding the Fourteenth Amendment due process claim, denies with leave to refile Defendants' motion for summary judgment as to this claim, and recommits the matter to the Magistrate Judge for further briefing and to receive additional evidence on this claim.[11]

---

explain this discrepancy or what factors the RHU Coordinator considered, the Court cannot determine whether these reviews were meaningful. And, although the Magistrate Judge noted that "the evidence does not support that any of the determinations at issue in this case involved Defendants Stirling or Earley" [Doc. 83 at 33], Plaintiff has averred that he wrote to Stirling about his continued SD classification but Stirling refused to respond or to remove Plaintiff, and the record includes a grievance form in which Earley was informed about Plaintiff's complaints regarding being in RHU for five years but denied Plaintiff's grievance [Docs. 52 ¶ 20; 56-6]. Neither the parties' briefing nor the Report address whether this evidence is sufficient to support personal liability in this case.

[10] For the same reasons, the Court is also unable to determine whether Defendants are entitled to qualified immunity on the current record.

[11] In their memorandum in support of their motion for summary judgment as to the merits of Plaintiff's due process claim, Defendants argued only that South Carolina recognizes no liberty interest for SCDC prisoners and that SCDC's policy requiring SD hearings has no bearing on the issue. [Doc. 56-1 at 26–29.] However, the Magistrate Judge correctly concluded that SCDC's policy mandating 90-day periodic reviews warrants further inquiry into whether Plaintiff has a state-created liberty interest in avoiding solitary confinement. [Doc. 83 at 26–31.] Because Defendants did not address the atypical-and-significant-

**Fourteenth Amendment Equal Protection Claim and Related Objections**

As the Magistrate Judge explained, to establish an equal protection claim, a plaintiff must satisfy a two-part test. [Doc. 83 at 35.] First, he must "demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Then, if he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Here, the Magistrate Judge concluded that Plaintiff has not pointed to any facts to indicate that his forced haircut—when a prisoner of another race who wanted a haircut was denied one—was the result of intentional or purposeful discrimination. [Doc. 83 at 35–36.] In his objections, Plaintiff contends he has shown that his forced haircut was the result of intentional and purposeful discrimination because he is being targeted by SCDC officials based on his filing grievances and lawsuits. [Doc. 86 at 4.] He also contends he has offered testimony from another SCDC official that Plaintiff's hair was not out of compliance but the other inmate's hair was out of compliance, and the other inmate is a different race from Plaintiff. [*Id.*]

Upon review, the Court overrules Plaintiff's objection with respect to the equal protection claim and agrees with the Magistrate Judge's conclusion that Plaintiff has failed to provide anything beyond conclusory assertions that the alleged unequal treatment was

---

hardship prong of the analysis, they did not submit much evidence regarding that prong. Any refiled motion for summary judgment should address—and provide evidentiary support for—all aspects of Plaintiff's due process claim, including whether he has a protected liberty interest and whether he was deprived of that interest without due process of law. *See Smith*, 964 F.3d at 274.

the result of intentional or purposeful discrimination based on race. *See Sylva Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 821 (4th Cir. 1995) (explaining that a plaintiff must establish defendants acted "*because*" of the plaintiff's membership in a protected class and noting "use of the classification must be clear and intentional").

**CONCLUSION**

Based upon the foregoing, the Court accepts in part and rejects in part the Report and Recommendation of the Magistrate Judge. Accordingly, Plaintiff's motion for preliminary injunction [Doc. 72] is DENIED, and Defendants' motion for summary judgment [Doc. 56] is GRANTED IN PART and DENIED IN PART with leave to refile. Defendants' summary judgment motion is denied with leave to refile as to Plaintiff's Fourteenth Amendment due process claim against Stirling and Earley and is otherwise granted. This matter is recommitted to the Magistrate Judge for further proceedings regarding the due process claim.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

September 25, 2026
Charleston, South Carolina

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.